UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALFRED LAM, et al.,

    Plaintiffs,

    v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.
_____/

No. C 08-4702 PJH

**ORDER GRANTING MOTIONS TO SEVER AND DISMISS**

Before the court are two motions submitted by the parties for the court's consideration and a determination thereon: (1) a motion to dismiss filed by defendants City and County of San Francisco ("the City"), and individual defendants Timothy Diestel ("Diestel"), Dennis Doyle ("Doyle"), Alfred Fleck ("Fleck"), Charles Lewis ("Lewis"), Allen Nance ("Nance"), John Radogno ("Radogno"), Wayne Williams ("Williams"), and Barry Young ("Young"); and (2) a motion to sever and dismiss filed by defendant Bryan Thomasson ("Thomasson"). Plaintiffs Alfred Lam ("Lam"), Gregory Chin ("Chin"), Frank Chen ("Chen"), Paula Leiato ("Leiato"), and Shania Raman ("Raman")(collectively "plaintiffs") have filed oppositions to both motions. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS the motion to dismiss filed by defendants the City and numerous individual defendants; and furthermore GRANTS the motion to sever and dismiss filed by defendant Thomasson, for the following reasons.

**BACKGROUND**

This is an action alleging discrimination in the workplace.

A. Background Allegations

Plaintiffs are all persons of Asian Pacific American race and/or national origin. See Second Amended Complaint ("SAC"), ¶ 4. During the relevant time period, all were employed by defendant Juvenile Probation Department ("JPD"), an entity that falls under the direction of defendant City and County of San Francisco ("CCSF"). The individual defendants were employed in supervisory positions to plaintiffs at the Juvenile Justice Center run by CCSF. Plaintiffs generally allege that defendants engaged in a pattern of discriminatory treatment against them, and unlawfully retaliated against plaintiffs whenever plaintiffs attempted to rectify the improper treatment against them.

Distilling the complaint's broad allegations into particulars, the complaint makes several distinct allegations with respect to each particular plaintiff:

1. Plaintiff Lam

The majority of allegations asserted by plaintiffs against defendants relate to plaintiff Lam. See SAC, ¶¶ 25-45. Lam alleges that, over the course of several incidents beginning in September 2005 and lasting through August 2008, he was subjected to discriminatory treatment and retaliation by defendants, on the basis of his race and/or national origin. Lam alleges, for example, that he was: (a) instructed to participate in high-risk training and duties (such as transporting and subduing juvenile residents) without adequate support from fellow Juvenile Justice Center employees; (b) issued reprimands and written warnings for conduct similar to that of other non-Asian Pacific American employees – for which those employees were not reprimanded or warned; and (c) was harassed and threatened by supervisors as a result of and in retaliation for efforts undertaken by Lam to expose misconduct by fellow employees. See generally id.

Lam points to two incidents in particular that were problematic. First, on May 20, 2006, Lam alleges that he – along with defendants Lewis, Fleck, and Young – were involved in an altercation with a juvenile resident, during which an individual named Semien (seems to be a fellow guard/employee who is not a named defendant) used excessive and

1  unreasonable force on the resident.  See SAC, ¶ 27.  After the Department of Health filed a
2  child abuse report stemming from the incident, Lam was reprimanded for misconduct.
3  Lam, however, alleges that he was the only Asian American involved in the incident, and
4  neither Semien nor any of the other defendants were reprimanded.  Id.  Lam furthermore
5  alleges that, although subsequently he sought investigation of the incident, his pleas were
6  ignored.

7       On June 13, 2006, Lam received his written reprimand, which he alleges was based
8  on false testimony from non-Asian American parties to the incident.  Id. at ¶ 26.  Lam
9  refused to sign the reprimand, and the next day, Lam alleges that he was reassigned out of
10 the unit where he had worked for the last three years, in retaliation for his refusal to sign
11 the reprimand.  Id. at ¶ 30.

12      Lam continued to request investigation of the May 20 incident, but alleges that he
13 was repeatedly denied or ignored by his supervisors.  On June 26, 2006, Lam filed a
14 supplemental report regarding the May 20 incident.  SAC, ¶ 32-33.

15      On July 3, 2006, Lam was intercepted by defendant Radogno while Lam was
16 performing his kitchen duties.  Lam alleges that Radogno pressured and harassed Lam to
17 sign off on a thirty-six page annual policy and training manual, without providing Lam the
18 opportunity to review the manual or to ask questions.  Radogno also allegedly instructed
19 the union representative who had been called to assist Lam, to leave, since it was "none of
20 [the representative's] business."  Id. at ¶ 34.  Lam further alleges that this incident of
21 harassment and intimidation was a pretext under which charges of insubordination could be
22 filed against him, as retaliation for Lam's pursuit of an investigation into the May 20, 2006
23 incident.  Id.  Two days later, a union steward allegedly advised Lam to file a complaint
24 regarding Radogno's misconduct on July 3.  Defendant Doyle, however, subsequently
25 discouraged Lam from filing the complaint.  Id. at ¶ 35.

26      On August 2, 2006, Radogno filed an allegation of workplace violence against Lam,
27 which Lam alleges was later found to be unsubstantiated.  In addition, Radogno filed an
28

insubordination claim against Lam. SAC, ¶ 36.

Several weeks later, on November 1, 2006, Lam filed a complaint with the City alleging an intentional concealment of facts regarding the May 20 incident, and subsequent harassment and intimidation. Lam also allegedly requested protection from the retaliation he asserted he was suffering as a result of his pursuit of the May 20 investigation. See id. at ¶ 38. Two weeks later, Lam met with a union representative regarding his November 1 complaint. Immediately thereafter, he alleges that he was accosted by defendant Williams, who made inappropriate and threatening comments to Lam about his family and children. Id. at ¶ 39.

In addition to the circumstances surrounding Lam's pursuit of an investigation regarding the May 20 incident, Lam also alleges that he witnessed a second incident on November 27, 2006 that led to further harassment. Specifically, Lam alleges that on or about that date, he again witnessed the individual named Semien kick a minor in the lower body and below the waist. SAC, ¶ 40. Defendant Young, who was also a witness to the incident, subsequently damaged Lam's work gear – something that Lam alleges was done in order to dissuade Lam from reporting this new instance of child abuse. Id. Lam nonetheless proceeded to file a report to defendant supervisors Taylor and Diestel. Subsequently, on December 5, 2006, Lam alleges that he was intimidated, criticized, and harassed by Young, for having filed the report concerning the November 27 incident. Id. at ¶ 41. That same day, Lam requested that the City and JPD take reasonable steps to prevent physical abuse against minor residents, and "cease the pattern of discrimination, harassment and retaliation against Asian American staff." SAC, ¶ 42.

As a result, and throughout 2007, Lam alleges that he was assigned to high risk posts in contradiction to JPD's policy and practice; that he was denied assistance when he requested it; and was frequently assigned to work with employees who had previously harassed Lam, even though he requested alternative assignments. In August 2008, Lam was ordered to break up a fight in a different unit from the one to which Lam was assigned,

4

even though there were other non-Asian Pacific American employees available in that unit. No one was ordered to assist Lam and as a result, Lam allegedly sustained multiple injuries. Lam alleges that the foregoing assignments and incidents were in retaliation for the complaints he made regarding the incidents of child abuse and racial discrimination. SAC, ¶¶ 43-44.

Since then, and from 2003 to the present, Lam alleges that he has been subject to disparate treatment by the City and JPD, to harassment and intimidation, and to retaliation for his numerous complaints alleging discrimination and child abuse. SAC, ¶ 45.

### 2. Plaintiff Chin

Plaintiff Chin alleges two instances of discriminatory treatment. On March 15, 2007, Chin and another non-Asian Pacific American employee were assigned to a post when a minor resident interfered with a control panel located in the staff control station. SAC, ¶ 46. Chin alleges that he was reprimanded, while the non-Asian Pacific American was not. Id.

Similarly, on September 28, 2007, Chin alleges that a minor resident was left behind sleeping in his room, and that Chin was the only employee "blamed" for the incident and issued a written reprimand, although three non-Asian Pacific American employees were also involved in the incident.

### 3. Plaintiff Chen

Plaintiff Chen alleges that, on one occasion in January 2007, defendant Williams verbally harassed and intimidated Chen, issuing profanities at Chen over the department radio, and making fun of Chen's foreign accent. SAC, ¶ 48. As a result, Chen filed a written complaint.

Several months later, on April 14, 2007, Chen and another employee were inadvertently locked into a minor resident's room. SAC, ¶ 49. Chen did not initially file a formal accident report, but rather logged the minor's behavior into the log book, in order to refrain from subjecting the minor to further punishment. One day later, Chen filed an incident report. A little over a month later, Chen was charged with nine counts of

misconduct in connection with the April 14 incident – charges that Chen alleges were exaggerated in retaliation for his having filed a prior written complaint alleging discrimination by JPD staff. SAC, ¶ 51. On September 12, 2007, Chen was suspended without pay for 30 days, and placed on probation for two years. Chen alleges that no other non-Asian Pacific American employee had been punished as severely for a similar type of incident. Id. at ¶ 52.

        4.     Plaintiff Leiato

Plaintiff Leiato alleges that she was subject to disparate treatment on the basis of her race and/or national origin. On March 6, 2005, for example, Leiato was involved in a verbal altercation with a non-Asian Pacific American employee. SAC, ¶ 54. Defendant Fleck instructed the non-Asian Pacific American employee to file a report on the incident, but not Leiato. As a result, Leiato was suspended from work without pay and a notation was made in her personal file, while no action was taken against the other employee. Id.

Similarly, on May 18, 2007, Leiato was involved with a verbal exchange again, this time with a disruptive youth who refused to obey orders. Leiato was subsequently charged with violent activity, reprimanded and suspended for 15 days without pay, and placed on probation for two years. SAC, ¶ 55. Leiato alleges however, that when a similar occurrence happened between a resident minor and a non-Asian Pacific American employee, the non-Asian Pacific American employee was only issued a written warning, and was given neither a suspension nor probation time. Id.

Finally, Leiato alleges that on one occasion in December 2008, she experienced an unexpected family emergency and contacted her supervisor to tell him she would be late. When she arrived approximately thirty minutes late, she was suspended without pay. Leiato alleges, however, that non-Asian Pacific American employees frequently arrive late for their shifts, and/or falsely record their time of arrival, but they are not reprimanded or suspended. See SAC, ¶ 56.

        5.     Plaintiff Raman

Plaintiff Raman makes no allegations regarding disparate treatment or harassment towards her on the basis of her race or national origin.  Rather, Raman alleges that she was subjected to sexual harassment by her supervisor, defendant Thomasson.

In February 2007, Raman was an intern at JPD.  Raman alleges that around that time, defendant Thomasson began to make sexual advances toward her.  He also repeatedly suggested to Raman that he could assist her in procuring a permanent position with JPD.  See SAC, ¶ 58.  Although initially unreceptive, Raman "succumbed" to Thomasson's advances, and began a romantic relationship with him.  Id.

On December 10, 2007, Raman allegedly became aware that Thomasson was married, and that Thomasson had previously become romantically involved with other women working at JPD.  Id. at ¶ 59.  Raman became upset, and contacted Thomasson in order to hear his side of the story.  Id.  The next day, Raman met Thomasson in the kitchen of a unit in JPD.  Id. at ¶ 60.  Raman allegedly informed Thomasson that she would no longer see Thomasson.  In response, Thomasson allegedly "grabbed and violently choked Raman, and then dragged her out of the unit."  Id.  The incident was observed by at least three co-workers.

Still later that same day, Thomasson approached and assaulted Raman in the JPD parking lot.  Id. at ¶ 61.  Thomasson "violently cursed [Raman], belittled and intimidated her, and at one point raised his hand in an apparent attempt to strike her."  Id.  After Raman defended herself, and ran to her car, Thomasson allegedly pursued her, "yelling obscenities and threatening her life."  Id.  This scene was witnessed by one other co-worker.  Id.

On December 13, 2007, defendant Doyle summoned Raman to a meeting regarding the December 11 incident.  SAC, ¶ 63.  Doyle informed Raman that she would go to jail if she filed an assault and battery charge against Thomasson.  Raman did not file charges against Thomasson.  Id.  On or about that same day, JPD suspended Raman for three weeks without pay.  Plaintiff alleges that Thomasson, however, was not reprimanded.  Id.

Raman filed an application for a temporary restraining order (TRO) against Thomasson on December 18, 2007, in order to prevent further harassment. SAC, ¶ 64. Plaintiff alleges that defendant Diestel, however, pressured her not to follow up on the TRO. Plaintiff agreed, and did not appear in court to extend the TRO. Id.

Subsequent to the December 11, 2007 incident, Raman alleges that Thomasson instituted an maintained a "campaign of harassment, intimidation and retaliation" against Raman. Id. at ¶ 65. Thomasson called Raman numerous times, during which calls Thomasson allegedly threatened Raman's life, and that of her family. Raman also received a number of threatening emails in which she was threatened, harassed and intimidated, and which implied that continuing to pursue allegations against Thomasson would result in harm to Raman. SAC, ¶ 66.

At the same time, Raman alleges that after the December 11 incident, an unidentified person, or persons DOE, appropriated Raman's identity, and initiated a campaign of misinformation against her, by repeatedly sending electronic messages to Thomasson. Id. at ¶ 69. Raman alleges she was not the author of any such messages, but states that nonetheless, Thomasson used the messages as grounds for filing a complaint against Raman with the JPD, and the existence of the messages were furthermore lodged in Raman's permanent file. Id.

Raman alleges that, between December 18, 2007 and June 30, 2008, she reported Thomasson's various actions to JPD and to defendants Doyle, Diestel, Lewis and Nance, stated that she had been discriminated against because of her sex, and requested a full investigation of the facts. SAC, ¶¶ 67, 70-71. Raman alleges that in response, JPD failed to take any action, and no investigation has been conducted. Id. Instead, plaintiff alleges she was retaliated against. First, she alleges she was given a worse assignment after returning from her suspension, and on July 1, 2008, she alleges she was terminated from her position at JPD. Id. at ¶¶ 68, 72. On November 25, 2008, Raman was informed that she was not selected for a permanent position as a Juvenile or Adult Deputy Probation

Officer, a position she had applied for prior to the December 11, 2007 incident. Id. at ¶ 73. Plaintiff alleges that the foregoing complaints she filed with the JPD and the City regarding the December 11 incident and subsequent conduct towards her "substantially contributed" to her non-selection for the permanent position, which she was otherwise qualified for. Id.

B.  Procedural History

Plaintiffs' original complaint was filed on October 10, 2008. The complaint named the City and County of San Francisco, as well as all individual defendants presently named – with the exception of defendant Thomasson. Plaintiffs originally alleged two causes of action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 et seq. See Declaration of Gordon-Creed ISO Thomasson Mot. to Dismiss ("Gordon-Creed Decl."), Ex. A.

On April 28, 2009, plaintiffs filed their first amended complaint, this time asserting seven causes of action, including constitutional due process and equal protection claims, wrongful termination, and Whistle Blower Act claims, in addition to the Title VII claims. See Gordon-Creed Decl., Ex. B.

On July 30, 2009, plaintiffs filed the operative second amended complaint, revising once more their stated claims, as well as the named defendants. Id., Ex. C. The SAC for the first time added defendants Thomasson and the Juvenile Probation Department as parties. The SAC also added new claims, such that the present iteration of stated causes of action against defendants now numbers thirteen, as follows: (1) violation of the equal protection clause of the Fourteenth Amendment, under 42 U.S.C. § 1983; (2) violation of 42 U.S.C. § 1981 (disparate treatment); (3) violation of 42. U.S.C. § 1981 (harassment and hostile workplace environment); (4) violation of 42. U.S.C. § 1981 (retaliation); (5) violation of Title VII, 42 U.S.C. § 2000e-2 et seq. (disparate treatment); (6) violation of Title VII, 42 U.S.C. § 2000e-2 et seq. (harassment and hostile workplace environment); (7) violation of Title VII, 42 U.S.C. § 2000e-2 et seq. (retaliation); (8) violation of Cal. Gov't Code § 12940 et seq. (failure to prevent unlawful discrimination and harassment); (9) tortious termination

of an at-will employee in violation of public policy; (10) violation of Cal. Civil Code § 1708.6 (domestic violence); (11) violation of Cal. Civil Code § 1708.7 (stalking); (12) battery; and (13) intentional infliction of emotional distress. See generally SAC.

Plaintiffs' first through seventh causes of action are alleged against all defendants. See SAC, ¶¶ 75-93. Plaintiffs' eighth cause of action is alleged against defendants the City and JPD only, while plaintiffs' ninth cause of action is alleged against defendants the City, JPD, and individual defendant Nance. Id. at ¶¶ 94-99. Plaintiffs' remaining causes of action – the tenth through thirteenth causes of action – are alleged against defendant Thomasson. Id. at ¶¶ 100-107.

The City and all individual defendants, except for defendant Thomasson, have now filed a motion to dismiss plaintiffs' second amended complaint. They have also filed a request for judicial notice in support thereof.[1] Defendant Thomasson has filed a separate motion to sever and/or dismiss the second amended complaint as to him, wherein he seeks to sever the claims against him from the remaining claims presented in plaintiffs' complaint. Both sets of defendants also seek, in the alternative, an order requiring a more definite statement with respect to all remaining viable claims.

**DISCUSSION**

A.  Legal Standards

    1.  Motion to Sever

Under Federal Rule of Civil Procedure 20, joinder is proper if (1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action. See Fed. R. Civ. P. 20(a); Desert Empire Bank v. Insurance Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir.1980). Even once these requirements are met, a district court must examine whether permissive joinder would "comport with the principles of fundamental fairness" or would

---

[1] The City has concurrently filed a request for judicial notice of certain relevant sections of the San Francisco City Charter. The court hereby GRANTS the request for judicial notice.

10

result in prejudice to either side. Desert Bank, 623 F.2d at 1375. Under Rule 20(b), the district court may sever the trial in order to avoid prejudice. See Fed. R. Civ. P. 20(b). See also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).

The court may remedy the misjoinder or non-joinder of parties by adding or dropping a party. See Fed. R. Civ. P. 21. Under the same rule, the court "may also sever any claim against a party." Id. Courts may sever claims even in the absence of misjoinder or non-joinder if necessary for the efficient administration of justice. 4 Moore's Federal Practice, § 21.02 (Matthew Bender 3d ed.). Generally, courts have used severance to remedy problems of personal jurisdiction, subject matter jurisdiction, or improper venue. Id. Under certain circumstances, the court may sever a claim to facilitate transfer to another venue. Id. A severance order creates two separate actions, unlike an order for separate trials under FRCP 42(b), which maintains a single action. See Fed. R. Civ. P. 42(b).

2.   Motion to Dismiss

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed only 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal pursuant to Rule 12(b)(6) is appropriate where there is no cognizable legal theory or there is an absence of sufficient facts alleged to support a cognizable legal theory. Id. The issue is not whether a plaintiff is likely to succeed on the merits but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his or her claims. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).

In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)(citations omitted). In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough to raise his/her right to relief "above the speculative level." See Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 553-56 (2007).  While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable.  Twombly, 550 U.S. at 570.; see also Ashcroft v. Iqbal, __U.S. __, 129 S. Ct. 1937, 1950 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief."  Id.

B.      Defendant Thomasson's Motion to Sever and Dismiss

Defendant Thomasson's motion is straightforward.  First, Thomasson argues that plaintiffs' first through seventh causes of action – which generally plead race-based discrimination claims against defendants pursuant to 42 U.S.C. §§ 1981 and 1983, as well as Title VII – fail to state a legal claim against him, since there are no allegations establishing Thomasson's personal conduct amounting to discrimination on the basis of race and/or national origin.  Moreover, Thomasson continues, the Title VII claims also fail for the additional reason that Title VII does not permit claims against individual defendants such as Thomasson.  Second, Thomasson argues that the remaining claims against him – plaintiffs' tenth through thirteenth causes of action – do not involve any common questions of law that would permit Thomasson's joinder as a defendant in this case.  Thus, Thomasson must be dismissed, and the claims severed from the case.

      1.      First Through Seventh Causes of Action

Plaintiff's first through seventh causes of action allege that defendants, collectively, engaged in both "race-based harassment" through "racially discriminatory" conduct and application of department rules, and disparate treatment, harassment, and retaliation based on race and/or national origin. See generally SAC. With respect to the fifth through seventh causes of action alleging Title VII claims specifically, plaintiffs also allege that defendants, collectively, have engaged in discrimination based on sex (in addition to race-based discrimination). See id. For the reasons that follow, defendant is correct in arguing that, as to him, all seven must be dismissed.

First, defendant has correctly noted that there are no allegations contained in plaintiffs' complaint that allege any conduct by defendant amounting to race-based discriminatory conduct. Indeed, not a single act of race-based conduct as to Thomasson has been alleged. Nor does plaintiff truly note otherwise. Although plaintiffs conclusorily claim, in opposition to the motion, that the second amended complaint "provides sufficient facts to support the[] claim[ that] Defendant Thomasson's conduct establishes several incidents of the pattern of racially-motivated conduct from which plaintiffs complain," plaintiffs promptly fail to point to any paragraph of the complaint that actually establishes any such incident. As such, plaintiffs' first through seventh causes of action, to the extent premised on any such conduct by Thomasson, are fatally deficient as to him.

Second, even the Title VII claims – which are additionally premised on claims of sex-based discrimination in the workplace, and are, at least facially, supported by the allegations contained in the complaint, see SAC, ¶¶ 58-74 – fail as to Thomasson.[2] For as defendant notes, the Ninth Circuit has made clear that "Title VII ... limit[s] civil liability to the employer." Miller v. Maxwell's Intern. Inc., 991 F.2d 583, 587-88 (9th Cir. 1993)(affirming district court's dismissal of plaintiff's Title VII claims against certain defendants in their individual capacities)("this court's [prior] ruling [] that individual defendants cannot be held

---

[2] Only plaintiffs' sixth cause of action is expressly labeled as a claim alleging "sex" based harassment. However, both the fifth and seventh causes of action also fairly allege discrimination based on "sex," liberally construed. See SAC, ¶¶ 87, 93.

13

1 liable for damages under Title VII is good law"). Thus, to the extent that plaintiffs attempt to
2 state their Title VII claims against defendant Thomasson individually, such an attempt is
3 contrary to law, and requires dismissal as to Thomasson.

4     Plaintiffs attempt to save their claims by noting that the Title VII claims have been
5 brought against Thomasson "in his official capacity," not his "individual" capacity. See, e.g.,
6 Thomasson Opp. Br. at 6:8-13. To that end, plaintiffs note that Title VII is to be interpreted
7 under normal principles of "agency" law in determining a proper "employer" for purposes of
8 liability, and a claim against an "official" may yet go forward. This argument is doomed
9 from the start, however, as the express holding of Miller contemplated plaintiffs' agency
10 argument, and soundly rejected it. See Miller, 991 F.2d at 587 (noting that "[t]he obvious
11 purpose of this [agent] provision was to incorporate respondeat superior liability into the
12 statute" and further that " it is inconceivable that Congress intended to allow civil liability to
13 run against individual employees"). Furthermore, even if the court were to construe the
14 Title VII claims alleged by plaintiffs as a suit against Thomasson in his "official capacity,"
15 such official capacity suits are simply another way of pleading an action against the entity
16 of which an officer is an agent – here, the City. See, e.g., Kentucky v. Graham, 473 U.S.
17 159, 165-66 (1985). And since the City is already named as a defendant, Thomasson
18 remains an improper target for plaintiffs' Title VII claims.

19     In sum, therefore, plaintiffs have failed to allege any conduct that could implicate a
20 viable race-based discrimination claim against defendant Thomasson, and cannot at any
21 rate allege a Title VII claim against him in his individual capacity (or his so-called "official"
22 capacity). Accordingly, plaintiffs' first through seventh causes of action – under 42 U.S.C.
23 §§ 1981 and 1983, and Title VII – must be, and are, DISMISSED as to Thomasson. Since
24 plaintiffs have furthermore failed to identify any additional allegations, based in existing fact,
25 that would or could cure the foregoing deficiencies, the dismissal is with prejudice.

26     2.    <u>Tenth Through Thirteenth Causes of Action</u>
27     Plaintiffs' tenth through thirteenth causes of action have been pled as to Thomasson
28

alone. They allege state law claims for domestic violence, stalking, battery, and intentional infliction of emotional distress, on the basis of Thomasson's alleged conduct as to plaintiff Raman specifically. See SAC, ¶¶ 100-107. Thomasson argues that his dismissal as a defendant in this case is warranted under FRCP 20, and that the claims should be severed pursuant to FRCP 21.

Once again, defendant is correct. Plaintiffs' fairly recent joinder of defendant Thomasson is only proper if (1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action. See Fed. R. Civ. P. 20(a); Desert Empire Bank, 623 F.2d at 1375. Here, neither element is truly satisfied.

First, plaintiffs have not asserted any right to relief against Thomasson that arises from the same transaction and occurrence that forms the basis for either plaintiffs' original claims, or the majority of claims presently stated. Plaintiffs' original, and presently stated claims, assert unequal treatment based on race and/or national origin. See generally SAC; see also Gordon-Creed Decl., Exs. A-B. The plaintiffs actually state separate discrimination claims, premised on distinct and varying instances of discrimination by differing defendants. Nonetheless, all of them share a commonality in that they seek recovery for race-based discriminatory treatment. Here, by contrast, defendant Thomasson was joined as a defendant for the first time in the second amended complaint, based on the inclusion of four *new* state law claims against him – none of which is stated against any of the original defendants, and none of which asserts race-based discriminatory treatment. Rather, the new allegations as to Thomasson are all premised on sex-based discrimination, and the new claims are based on the same sex-based conduct. See generally SAC. In other words, defendant Thomasson's joinder, and the additional claims against him broaden the scope of the present complaint entirely – to include sex discrimination claims that were never originally alleged, and which stem from an entirely different course of conduct by a wholly new defendant.

Not only do these facts prevent plaintiffs from asserting a right to relief arising out of the same transaction and occurrence in these circumstances, but as a secondary matter, plaintiffs also cannot demonstrate that some question of law or fact common to all the plaintiffs will arise in the action. For the same foregoing reasons, the questions of law and fact are entirely distinct, as between plaintiffs alleging race-based discrimination claims, and plaintiff Raman's single sex-based discrimination claim alleged against defendant Thomasson alone.

For these reasons, the court concludes that Thomasson has been improperly joined as a defendant, and his dismissal from plaintiffs' action is appropriate. Severance of the claims against him is also proper under FRCP 21, as maintaining the current claims against Thomasson contravenes the court's interest in the efficient administration of justice. Rather, the court finds that the interests of justice and efficiency are best served by allowing plaintiffs (and most likely, plaintiff Raman) to proceed with her claims against defendant Thomasson via separate action. Accordingly, Thomasson's motion to dismiss his presence in the instant lawsuit, and to sever the tenth through thirteenth causes of action against him, is GRANTED.

The court furthermore notes that, to the extent plaintiffs – or plaintiff Raman specifically – have alleged Title VII claims that are premised on allegations of sex-based discrimination, and those claims remain viable as against defendant the City (per the foregoing discussion), severance of those claims is also appropriate, to be pursued in a separate action in connection with pursuit of the tenth through thirteenth causes of action against Thomasson. Thus, and notwithstanding the fact that this issue has not expressly been raised by the parties in connection with Thomasson's motion, the court accordingly SEVERS the Title VII claims (as stated in the fifth, sixth, and seventh causes of action) as against the City, if indeed plaintiff Raman intends to pursue sex-based discrimination claims against the City.

In view of the foregoing, the court declines to rule on Thomasson's motion for a

16

more definite statement.

C.   The City's and Individual Defendants' Motion to Dismiss

Defendants' separately filed motion to dismiss is equally straightforward.  Indeed, many of the arguments made by defendants therein overlap with Thomasson's motion to sever and dismiss.  As a result, defendants' arguments – and plaintiffs' opposition thereto – can, for the most part, be preliminarily and readily dispatched with, as follows:

First, defendants argue that plaintiffs' tenth through thirteenth causes of action are improperly joined in this action, and they furthermore seek severance thereof, based on the same arguments as those made by Thomasson in the foregoing discussion.  In addition, however, defendants' arguments focus on the fact that the claims against Thomasson have been asserted by plaintiff Raman only, and defendants' request therefore specifically notes that plaintiff Raman should also be severed from the action in order to bring her claims against Thomasson.  For the reasons already stated by the court in connection with Thomasson's motion to sever and dismiss, the court agrees with defendants that plaintiffs' tenth through thirteenth causes of action should be severed from the case.  The court accordingly GRANTS defendants' request for severance of these claims.  In addition, to the extent these claims are being asserted by plaintiff Raman only, her severance from the case in order to assert the tenth through thirteenth causes of action necessarily follows.  If, however, plaintiff Raman intends to proceed with respect to any claims that allege race-based discrimination claims against defendants, or any remaining claims against the City, her joinder in the present action is not necessarily improper.  Plaintiff Raman's allegations in this regard, however, must be set forth with specificity in any amended complaint filed by plaintiffs, as ordered below.

Second, defendants contend that the court should also sever plaintiffs' sixth cause of action for harassment and hostile work environment based on sex (pursuant to Title VII).  This argument similarly overlaps with the arguments made by Thomasson.  Defendants note, for example, that to the extent this claim alleges sex-based discrimination, it is as to

17

Thomasson only, on plaintiff Raman's behalf only, and that the claim therefore presents a distinct gender based claim arising from a separate and independent nucleus of facts. Again, for the reasons already discussed in connection with Thomasson's motion to dismiss, the court agrees with defendants. Thus, to the extent plaintiff alleges a Title VII claim for sex-based discrimination, the motion to sever this claim is GRANTED. As noted above, however, severance of this claim extends only to plaintiff's remaining claim against the City (if plaintiff chooses to pursue it), as defendants' argument on this point with respect to defendant Thomasson is MOOT, in view of the court's foregoing ruling dismissing plaintiffs' sixth cause of action against Thomasson with prejudice. The court furthermore notes that, to the extent that plaintiffs' sixth cause of action is premised on allegations of *race*-based discrimination and/or harassment and retaliation asserted by plaintiffs other than Raman, the court denies defendants' request to sever the claim.

Defendants also argue that (1) defendant JPD should be dismissed from the action, since it is a constituent agency of the City's judicial branch – and thus, without the legal capacity to be sued independently from the City; and (2) that plaintiffs' ninth cause of action for tortious termination in violation of public policy should be dismissed, because City is immune from direct tort liability under Cal. Gov't Code § 815 et seq. Plaintiffs have expressly conceded both points in their opposition. See Opp. Br. at 3:22-28. Thus, defendants' motion to dismiss on these grounds is GRANTED.

To the extent that defendants also argue that all individual defendants should be dismissed from plaintiffs' fifth, sixth, and seventh causes of action alleging Title VII claims, pursuant to Miller v. Maxwell's Int'l, 991 F. 2d 583, this argument, too, has been addressed by the court in connection with the foregoing discussion regarding defendant Thomasson's motion to dismiss. For the same reasons stated therein, defendants' argument here is well taken, and the court accordingly GRANTS defendants' motion to dismiss the individual defendants from the Title VII claims. This leaves only the City as a proper defendant.

Finally, defendants make one last argument: that plaintiffs should be required to

provide a more definite statement, and identify which causes of action relate to which plaintiffs and defendants. In support of their request, defendants note, for example, that the first through fourth causes of action do not identify the particular defendants that are alleged to have engaged in wrongful conduct. Rather, the second amended complaint continually refers to "defendants" collectively, and furthermore fails to distinguish both the particular plaintiffs who are asserting each claim being pled, and as well as the specific conduct being complained of. See generally SAC. Having reviewed the complaint, the court furthermore finds that plaintiffs' conclusory and overly broad allegations extend to plaintiffs' fifth, sixth, seventh, and eighth causes of action, insofar as these claims fail to set forth the particular individual's conduct giving rise to the City's alleged liability. See id.

In short, and in view of the inclusion of multiple individual plaintiffs and defendants in this action, the various disparate allegations made by plaintiffs in their recitation of factual allegations, and the complaint's failure to provide anything other than a generic and collective charge of liability as to all defendants in the aggregate, defendants have been deprived with a fair opportunity to frame a responsive pleading. Thus, a more definite statement is warranted under FRCP 12(e). See McHenry v. Renne, 84 F.3d 1172, 1176 (9th Cir. 1996)(FRCP 12(e) required plaintiff "to file a proper complaint which states clearly how each and every defendant is alleged to have violated plaintiffs' legal rights").

D.  Conclusion

For the foregoing reasons, the court accordingly GRANTS defendant Thomasson's motion to sever and dismiss, and furthermore GRANTS the City and remaining individual defendants' motion to dismiss, on the specific grounds stated above. In addition, the court GRANTS the latter defendants' motion for a more definite statement with respect to the remaining claims still viable in this action.

Plaintiffs' shall file a third amended complaint, in compliance with the foregoing, no later than February 22, 2010. The complaint shall conform to the rulings contained herein

and shall not add any additional claims or parties.

**IT IS SO ORDERED.**

Dated: January 21, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge