1
2
3                    UNITED STATES DISTRICT COURT
4                   NORTHERN DISTRICT OF CALIFORNIA
5
6
   ALFRED LAM, et al.,
7
              Plaintiffs,                    No. C 08-4702 PJH
8
        v.                                   **ORDER GRANTING MOTION FOR**
9                                            **SUMMARY JUDGMENT AND**
   CITY AND COUNTY OF SAN                    **DENYING MOTION FOR SANCTIONS**
10  FRANCISCO, et al.,
11            Defendants.
   _____/
12
13        Defendant's motion for summary judgment and plaintiffs' motion for sanctions came

14  on for hearing before the court on February 15, 2012.   Plaintiffs Alfred Lam, Frank Chen,

15  Gregory Chin, and Paula Leiato appeared through their counsel, Dow Patten and Spencer

16  Smith.  Defendant City and County of San Francisco appeared through its counsel, Lauren

17  Monson and Rafal Ofierski.  Having read all the papers submitted and carefully considered

18  the relevant legal authority, the court hereby GRANTS defendant's motion for summary

19  judgment and DENIES plaintiffs' motion for sanctions, for the reasons stated at the hearing,

20  and as follows.

21                            **BACKGROUND**

22        This is an action alleging discrimination in the workplace.  Plaintiffs Alfred Lam

23  ("Lam"), Gregory Chin ("Chin"), Frank Chen ("Chen"), and Paula Leiato ("Leiato")

24  (collectively "plaintiffs") are all persons of Asian Pacific American ("APA") race and/or

25  national origin.  See Third Amended Complaint ("TAC"), ¶ 5.  During the relevant time

26  period, all were employed by defendant Juvenile Probation Department ("JPD"), an entity

27  that falls under the direction of defendant City and County of San Francisco ("defendant" or

28  the "City").  See TAC, ¶ 6.  Individual defendants Timothy Diestel ("Diestel"), Dennis Doyle

("Doyle"), Alfred Fleck ("Fleck"), Charles Lewis ("Lewis"), John Radogno ("Radogno"), and Barry Young ("Young")(collectively "individual defendants") were allegedly employed in supervisory positions above plaintiffs at the JPD.  See id. at ¶¶ 8-12, 20.  Plaintiffs generally allege that defendants engaged in a pattern of discriminatory treatment of them and unlawfully retaliated against them when they complained about the discriminatory treatment.

A.      Background Facts

        The JPD operates two detention facilities for minors who have been charged with criminal offenses, or have been deemed to be beyond parental control.  The two detention facilities are Juvenile Hall located in the City, and Log Cabin Ranch located in San Mateo County.  Juvenile Hall has eight separate detention housing units.  Each unit contains single rooms where individual detainees are locked at night, and a common area where they are allowed to congregate during the day.  Male and female detainees are housed separately, and detainees are assigned to different housing units based on factors including age, size, and the nature of the charges they face (from shoplifting to murder).  See generally Declaration of Toni Ratcliff-Powell ISO MSJ ("Ratcliff-Powell Decl."), ¶¶ 3-4.

        Juvenile Hall employs staff in various civil service classifications including 8316 counselors, 8318 counselors, 8320 counselors, 8322 senior counselors, and 8324 supervising counselors.  Plaintiffs Lam, Leiato and Chin are 8320 counselors, as was plaintiff Chen when he retired in 2009.  See Declaration of Rafal Ofierski ISO MSJ (Ofierski Decl."), Ex. I at 21:15-22:4.  The duties of 8320 counselors include supervising detainees' behavior; maintaining security in the detention units; escorting detainees to and from various locations inside and outside Juvenile Hall; keeping various records such as logbooks indicating the count and movements of detainees; and organizing and supervising various activities intended to educate detainees and modify anti-social behaviors.  See Ratcliff-Powell Decl., ¶ 6, Ex. B; Ofierski Decl., Ex. K at 97:15-25.

2

United States District Court

For the Northern District of California

1  Distilling the evidentiary record into further particulars, the parties set forth the

2  following facts with respect to each particular plaintiff:

3      1.   <u>Plaintiff Lam</u>

4  The majority of allegations asserted by plaintiffs against defendants relate to plaintiff

5  Lam.  Lam alleges that, over the course of several incidents beginning in September 2005

6  and lasting through August 2008, he was subjected to discriminatory treatment and

7  retaliation by defendants, on the basis of his race and/or national origin.  <u>See</u> TAC, ¶¶ 19-

8  40.

9  Lam, who is Chinese, began working at JPD in 2001.  <u>See</u> Ofierski Decl., Ex. F at

10  34:16-18; 35:2.  He began working as a provisional full time 8320 counselor, but was

11  appointed as a permanent full time 8320 counselor in June 2002.  <u>See id</u>. at 34:24-35:2.

12  For the first several years of his employment, he was supervised by individual defendant

13  Radogno, and was given generally positive performance evaluations.  <u>See</u> Declaration of

14  John Radogno ISO MSJ ("Radogno Decl."), ¶ 3, Exs. A-B.  In 2003, 2004 and 2005, for

15  example, Lam was rated as "exceeding expectations."  <u>See</u> Lam Decl., Exs. A-C.

16  In March 2006, senior counselor Al Fleck discovered that Lam and another

17  counselor who were charged with inspecting visitors' bags failed to detect two glass jars

18  that should not have been allowed inside Juvenile Hall.  Fleck sent a memo to Lam and the

19  other employee reminding them to be thorough.  <u>See</u> Ofierski Decl., Ex. H at 63:20-67:3,

20  Ex. 32.

21  In May 2006, there was a physical altercation in the unit where Lam worked.  It

22  involved a detainee with a history of mental health issues.  The detainees and staff who

23  witnessed the incident – including Lam – reported that the detainee attacked counselor

24  Damien Semien and struck him in the face with his fists as Semien tried to defend himself.

25  <u>See</u> Declaration of Dennis Doyle ISO MSJ ("Doyle Decl."), ¶ 4, Ex. D.  Afterwards,

26  Radogno held a meeting with staff to review the incident.  During the meeting, Radogno

27  noted that Lam made statements that he did not know that an event was planned for the

28

United States District Court

For the Northern District of California

1  unit on the day the detainee attacked Semien (which Lam should have known if he were

2  reading the daily logbook as required), and also that he did not immediately come to

3  Semien's defense because he had to put on knee pads first. <u>See</u> Radogno Decl., ¶ 4, Ex.

4  C. Based on these statements, Radogno met with Lam after the staff meeting, in order to

5  discuss Lam's shortcomings during the incident. Radogno also made an official "Record of

6  Discussion" setting forth his concerns. Radogno Decl., ¶ 5, Ex. D.

7       As part of the investigation into the incident, individual defendant Diestel (JPD

8  Assistant Director) discovered that there was tension between Lam and other counselors in

9  his unit. Lam specifically reported that he did not feel comfortable working in his unit, and

10  the other counselors reported that they were wary of working with Lam because they felt he

11  could not be trusted in emergency situations. Diestel concluded that the mistrust posed

12  operational problems and risks, since the unit where Lam worked was the maximum

13  security unit. Consequently, Diestel reassigned Lam to the admissions unit, where he

14  believed Lam's ability to deal well with the public would be an asset. <u>See</u> Declaration of

15  Timothy Diestel ISO MSJ ("Diestel Decl."), ¶ 3, Ex. A.

16       In early 2006, JPD issued six new informational packets (apprising of changes to

17  JPD policies and regulations). Radogno began holding a series of six sessions with each

18  staff member, in order to review the informational packets with each member, and to

19  ensure staff was up to date on all JPD policies and regulations. Radogno's first five

20  sessions with Lam were uneventful. When Radogno asked Lam to review the final

21  informational packet with him in July 2006, Lam refused to do so on grounds that he had

22  not had sufficient time to review it alone. Radogno Decl., ¶ 6. Lam then summoned his

23  union representative, who encouraged Lam not to review the packet with Radogno, and

24  Lam thereafter refused Radogno's request. The next day, however, Radogno conducted

25  the training session with Lam without incident. <u>See</u> Radogno Decl., ¶ 6, Ex. E.

26       Radogno complained to his superiors about Lam's conduct, and wrote a memo

27  regarding Lam's refusal to participate in the training. He suggested that Lam should be

28

1   disciplined, although JPD did not immediately take any disciplinary action against Lam in

2   response to Radogno's complaint.  Radogno Decl., ¶ 7, Ex. F.  In April 2007, based on

3   these events, individual defendant Doyle (Director of Juvenile Hall ) admonished Lam for

4   insubordination.  Doyle Decl., ¶ 2, Ex. A.

5          In August 2007, Lam's co-worker Reginald Cooks asked Lam why he had not

6   entered a count of detainees in the logbook in the detention unit where they were working,

7   and Cooks then proceeded to call Lam a "smartass."  See Ofierski Decl., Ex. H at 81:1-

8   83:2.  Lam demanded a written apology, but JPD did not order Cooks to provide one.

9   Doyle Decl., ¶ 7, Ex. G.  In late 2007, Lam filed a formal grievance regarding the matter,

10  which JPD denied in January 2008.  Id.; Ofierski Decl., Ex. H at 81:14-83:6.

11         On March 15, 2008, Lam was assigned to a high volume work post alone, and he

12  was also ordered to ambulance high risk detainees alone.  See Declaration of Alfred LAM

13  ISO MSJ Opp. ("Lam Decl."), Exs. I-J.

14         On April 20, 2008, Lam complained to JPD and his union regarding management's

15  "misuse" of performance appraisals.  Lam Decl., Ex. K.  On May 22, 2008, Lam received

16  his performance evaluation for the 2006-07 year.  Lam met his objectives in all but one of

17  six categories: attendance and punctuality.  Lam Decl., Ex. L.  Lam disputed the 2006-07

18  performance appraisal by attaching a rebuttal, stating that he had been harassed, retaliated

19  and discriminated against, causing him stress and affecting his health.  Lam Decl., Exs. M-

20  N.

21         In June 2008, Lam refused to report to his assigned post because he would have to

22  work with Cooks.  When he disobeyed a direct order to report to his post, Doyle ordered

23  Lam home.  Lam then filed a complaint alleging that Doyle's order was in retaliation for his

24  numerous previous complaints.  See Declaration of Silvia Castellanos ISO MSJ

25  ("Castellanos Decl."), ¶ 3, Ex. A.  The City's Department of Human Resources' ("DHR")

26  Equal Employment Opportunity ("EEO") Division investigated the complaint and found no

27  evidence to support it.  Lam appealed to the Civil Service Commission, which upheld

28

United States District Court

For the Northern District of California

1   DHR's finding.  Id., Ex. B.

2         In October 2009, Lam submitted a public document to the Civil Service Commission

3   that included the unredacted name of the detainee who had attacked counselor Semien in

4   May 2006.  See Declaration of Louise Brooks Houston ISO MSJ ("Brooks Houston Decl."),

5   ¶ 7, Ex. D at Exs. B-C.  Since this violated Lam's signed oath promising not to disclose any

6   information about the detainees, in November 2009, senior counselor Mildred Singh

7   reprimanded Lam for violating his oath and the confidentiality laws.  See id.

8         2.      Plaintiff Chin

9         Plaintiff Chin began working as an 8320 counselor at Juvenile Hall in 1998, and is

10  Chinese American.  See Ofierski Decl., Ex. K at 20:22-21:8.  Chin received performance

11  appraisal ratings of competent and effective from 2002 throughout 2006.  He has received

12  three commendations for his work, and two admonishments.

13        Chin's first admonishment came in March 2007, from senior counselor Jose Alardo.

14  Alardo admonished Chin for breaching security regulations after he learned that Chin had

15  left his post to go to the bathroom without notifying his coworker, which allowed a detainee

16  he was supervising to gain access to a door control panel and let other detainees out from

17  their rooms.  See Declaration of Jose Alardo ISO MSJ ("Alardo Decl."), ¶ 2, Ex. A; Ofierski

18  Decl., Ex. K at 43:2-44:3; Declaration of Gregory Chin ISO MSJ Opp. ("Chin Decl."), Ex. F.

19        In September 2007, Chin received his second admonishment, this time from senior

20  counselor Barry Young.  He was admonished for leaving a detainee unsupervised once

21  again, and for failing to do a mandatory count that would have revealed that he was leaving

22  the detainee behind.  See Ofierski Decl., Ex. K at 47:17-48:13.

23        With respect to both admonishments, Chin asserts that he was the only one

24  disciplined for the oversight, despite that several other non-APA workers were also

25  culpable.  In November 2009, he filed a rebuttal to his second admonishment, which Chin

26  believed would commence an internal grievance process.  See Chin Decl., ¶ 17.  No

27  response to Chin's written rebuttal was ever made or filed.

28

United States District Court

For the Northern District of California

1    Chin does point out, however, that he received his very first commendation on the

2    job, shortly after filing a complaint with the Equal Employment Opportunity Commission

3    ("EEOC") regarding his second admonishment.  See Chin Decl., Ex. I-J.

4        In late 2009, JPD had an opening for an 8322 senior counselor position, and Chin

5    applied for the position.  Chin and the other candidates who met the minimum qualifications

6    were required to complete a take-home written examination.  Two JPD senior managers,

7    who did not know the identity of the applicants, then graded the examinations.  Based on

8    the anonymous examination scores, JPD Human Resources staff placed the applicants in

9    three ranks.  Only the applicants in the first rank were invited to participate in the next step

10   of the hiring process, which consisted of interviews.  Chin's written examination score

11   placed him in the second rank of applicants, and therefore he was not interviewed.  See

12   Brooks Houston Decl., ¶¶ 3-5, Exs. A-B.

13       Chin points out that his 2009 performance evaluation reflected that he was meeting

14   expectations in performing certain functions of the job that he had been tested on in the

15   take-home written examination for promotion, thus leading to the conclusion that his written

16   exam results were "suspiciously poor."  See Chin Decl., Ex. N.

17       3.    Plaintiff Chen

18       Plaintiff Chen, who is Chinese, started working at Juvenile Hall in May 2000 and

19   retired in 2009.  See Ofierski Decl., Ex. L at 13:19-25, 23:12-23.  He was hired as a

20   temporary on call counselor, and became a permanent full time 8320 counselor in

21   September 2000.

22       In 2001, Chen received his first performance appraisal and was rated as "exceeding

23   standards" in knowledge of his job.  See Declaration of Frank Chen ISO MSJ Opp. ("Chen

24   Decl."), Ex. A.  In his next performance appraisal in 2005, he was again rated as

25   "exceeding standards" in 6 out of 8 categories.  Chen Decl., Ex. B.

26       On January 19, 2007, Chen complained to officer Charles Lewis and to Chief

27   Probation Officer William Sifferman about defendant Wayne Williams' unprofessional

28

7

United States District Court

For the Northern District of California

1   conduct in the workplace.  Chen requested a roundtable meeting with Williams and higher

2   management, so that the incident would not repeat itself.  Chen Decl., Ex. D.

3          In November 2007, JPD Chief Siffermann suspended Chen for thirty days, based on

4   a finding that Chen had been grossly negligent and had violated several security

5   regulations in connection with an earlier incident.  Specifically: Chen allowed a detainee to

6   leave his room, which allowed the detainee to attack another detainee; Chen and his

7   coworker Scott Kato then allowed themselves to be locked in a room where they placed the

8   escaped detainee; Chen did not carry a radio or a scan pen that could be used to call for

9   help; Chen carried a cell phone but did not use it to call for help; Chen did not report the

10  incident to his supervisor or to medical staff; Chen asked and convinced Kato not to file an

11  incident report; and Chen did not file the required report until the episode came to the

12  attention of other staff.  See Declaration of Barry Young ISO MSJ ("Young Decl."), ¶ 4, Ex.

13  B; Declaration of Diana Garcia ISO MSJ ("Garcia Decl."), ¶ 3, Ex. A.  Chief Sifferman

14  offered to reduce the suspension to fifteen days and hold the remaining fifteen days in

15  abeyance, but Chen refused.  See Brooks Houston Decl., ¶ 8, Ex. I.

16         Chen appealed his suspension to DHR EEO, asserting that the JPD had not

17  disciplined non-APA employees for similar or worse misconduct.  DHR investigated the

18  claim and found no evidence to support it.  Garcia Decl., ¶ 3, Ex. A. Chen then appealed to

19  the Civil Service Commission, which upheld DHR's finding.  See Declaration of Sandra Eng

20  ISO MSJ ("Eng Decl."), ¶ 2, Ex. B.

21         Aside from this suspension, Chen contends that he was subjected to improper

22  language and/or undeserved verbal criticism on several occasions.  In November 2007 and

23  January 2008, senior counselor Wayne Williams purportedly spoke to Chen using

24  profanities.  See Ofierski Decl., Ex. L at 34:8-36:5, 37:7-10,  42:16-45:13.  In October 2006,

25  Radogno accused or scolded him for failing to perform a task properly.  See id. at 48:17-

26  50:16.  And in 2004 and 2008, senior counselor Barry Young also scolded him.  See id. at

27  55:5-19, 58:6-59:2, 68:13-19.

28

United States District Court

For the Northern District of California

4.   Plaintiff Leiato

Plaintiff Leiato began working as a permanent 8320 counselor in Juvenile Hall in 1996, and identifies herself as a Pacific Islander from Samoa.  See Ofierski Decl., Ex. J at 22:1-3, 30:16-24.

In a 2001 performance evaluation, Leiato was rated as exceeding expectations.  In a 2005 performance evaluation, Leiato was rated as exceeding expectations in several key substantive areas, though her overall evaluation was "development needed due to attendance issues."  See Declaration of Paula Leiato ISO MSJ Opp. ("Leiato Decl."), Exs. A, C.

In May 2007, Leiato was suspended for fifteen days, following a confrontation between her and a detainee, which confrontation was witnessed by senior counselor Al Fleck.  According to Leiato's own report, she responded to hostile behavior exhibited by the detainee in question by saying "you're right, I'm the queen of bitches and you can do whatever you wanna do" and "Hey you wanna beat my ass?  I'm right here.  I'm not going anywhere."  See id. at 40:14-21, 93:14-17, Ex. OO.  The incident was investigated and after the investigation confirmed that Leiato used profanity and combative language that provoked the detainee to attempt to assault Leiato, defendant Doyle recommended that Leiato be suspended for thirty days for violating Juvenile Hall regulations that require counselors to use physical and verbal techniques that de-escalate, rather than escalate the potential for violence.  See Doyle Decl., ¶ 3, Ex. C.  Chief Sifferman reduced the suspension to fifteen days and directed Leiato to take an anger management course.  See Ofierski Decl., Ex. J at 87:24-88:25, Ex. TT.

Leiato contested the suspension on grounds that she had been treated more severely compared to non-APA employees.  DHR investigated the claim, and found that none of the allegedly similar episodes involved a counselor challenging a detainee to a fight.  See Declaration of Janie White ISO MSJ ("White Decl."), ¶ 3, Ex. A.

In December 2008, Juvenile Hall Director Ratcliff-Powell sent Leiato home without

9

United States District Court

For the Northern District of California

1  pay after Leiato was thirty minutes late for work.  Leiato admitted she was late, and

2  Juvenile Hall regulations expressly authorize such an action whenever an employee is

3  more than 15 minutes late.  See Ofierski Decl., Ex. I at 64:21-65:15, Ex. 10; id., Ex. J at

4  54:20-55:1.

5       In July 2010, Ratcliff-Powell denied Leiato's request to leave work two hours early in

6  order to attend a traditional and cultural family event.  See Ofierski Decl., Ex. J at 123:8-

7  127:23.  Ratcliff-Powell states that the request was denied because there was no one

8  available to take Leiato's place.  See Ratcliff-Powell, Decl., ¶ 9.

9  B.    Procedural History

10      Plaintiffs' original complaint was filed on October 10, 2008.  The complaint named

11  the City and County of San Francisco, as well as numerous individual defendants.

12  Plaintiffs originally alleged two causes of action under Title VII of the Civil Rights Act, 42

13  U.S.C. § 2000e-2 et seq.

14      On April 28, 2009, plaintiffs filed their first amended complaint, and on July 30, 2009,

15  plaintiffs filed a second amended complaint, revising once more their stated claims, as well

16  as the named defendants.

17      After a subsequent motion to dismiss, plaintiffs filed the operative third amended

18  complaint.  After yet another motion to dismiss was heard, the court granted the City's

19  motion to dismiss three causes of action alleged under 42 U.S.C. § 1981.  This effectively

20  terminated the individual defendants from the action, since they had only been named in

21  the section 1981 claims.

22      As a result, the third amended complaint asserts only five remaining claims against

23  the remaining City defendant:

24      (1)   violation of 42 U.S.C. § 1983 (First Cause of Action);

25      (2)   violation of Title VII, by virtue of disparate treatment based on race and

26           national origin (Fifth Cause of Action);

27      (3)   violation of Title VII, by virtue of harassment and hostile work environment

28

10

United States District Court

For the Northern District of California

1    race discrimination (Sixth Cause of Action);

2    (4)    violation of Title VII, by virtue of retaliation (Seventh Cause of Action); and

3    (5)    violation of California's Fair Employment and Housing Act ("FEHA"), for failure

4    to prevent discrimination and harassment (Eighth Cause of Action)

5    See generally TAC.

6    The City now moves for summary judgment as to all claims.  Plaintiffs have also

7    separately moved for civil contempt and for sanctions against the City.

8                                          **DISCUSSION**

9    A.    Legal Standards

10    1.    Motion for Summary Judgment

11    Summary judgment is appropriate when there is no genuine issue as to material

12    facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

13    Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

14    Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

15    is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

16    A party seeking summary judgment bears the initial burden of informing the court of

17    the basis for its motion, and of identifying those portions of the pleadings and discovery

18    responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

19    v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

20    at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

21    than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

22    888 (9th Cir. 2003).

23    On an issue where the nonmoving party will bear the burden of proof at trial, the

24    moving party can prevail merely by pointing out to the district court that there is an absence

25    of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

26    moving party meets its initial burden, the opposing party must then set forth specific facts

27    showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

28

R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

    2.    Motion for Sanctions

        Generally, the court has inherent authority to punish a party's failure to obey the terms of a court order through a civil contempt proceeding.  See, e.g., Int'l Union, UMWA v. Bagwell, 512 U.S. 821, 831-32 (1994).  "Civil contempt is characterized by the court's desire to compel obedience to a court order or to compensate the contemnor's adversary for the injuries which result from the noncompliance."  Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983)(internal citations omitted).  Given the remedial purpose of the sanction, a finding of contempt must be accompanied by conditions by which contempt may be purged, spelled out in either the original order or the contempt order.  Moreover, although the district court generally must impose the minimum sanction necessary to secure compliance, see Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir.1992), the district court retains discretion to establish appropriate sanctions.  See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir.1992).

B.    Defendant's Motion for Summary Judgment

        Defendant seeks summary judgment on the merits of each one of the claims alleged against the City.  Specifically, defendant contends that plaintiffs cannot demonstrate the existence of triable issues of material fact as to any of the five remaining claims asserted by the individual plaintiffs in their complaint: (1)  plaintiffs' Title VII claim, to the extent premised on disparate treatment due to race; (2) plaintiffs' Title VII claim, to the extent premised on harassment and hostile work environment; (3) plaintiffs' Title VII claim, to the extent premised on retaliation; (4) plaintiffs' section 1983 claim; and (5) plaintiffs' Fair Employment and Housing Act claim, which is premised on failure to prevent unlawful discrimination and harassment.

        Preliminarily, the court notes that the gravamen of plaintiffs' complaint and the underlying thread connecting all the foregoing claims, is plaintiffs' contention that the City is

United States District Court

For the Northern District of California

12

United States District Court

For the Northern District of California

1   liable to plaintiffs for certain acts of discrimination that plaintiffs assert were directed at

2   them during the course of their tenure with JPD.

3       The general framework for proving discrimination within the context of plaintiffs'

4   claims is well established, and is guided by the burden-shifting format established in

5   McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas, a

6   plaintiff must first prove a prima facie case of discrimination by showing that he is a

7   member of a protected class; that he was performing his job duties in a competent and

8   satisfactory manner; that he suffered an adverse employment action; and that some that

9   similarly situated individuals outside the protected class were treated more favorably, or

10  other circumstances surrounding the adverse employment action give rise to an inference

11  of discrimination.  Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010);

12  Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 355- 56 (2000).  The Ninth Circuit has repeatedly

13  emphasized that a plaintiff's burden in establishing a prima facie case of discrimination is

14  "minimal."  Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1094 (9th Cir. 2005).

15      Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to

16  the employer to offer a legitimate, nondiscriminatory reason for the adverse employment

17  decision.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).

18  An employer's reasons need not rest on true information.  Villiarimo v. Aloha Island Air,

19  Inc., 281 F.3d 1054, 1063 (9th Cir. 2002).  Instead, courts require only that the employer

20  "honestly believed its reasons for its actions, even if its reason is foolish or trivial or even

21  baseless."  Id. (citation and quotation omitted).

22      If the employer meets this burden, the plaintiff must then raise a triable issue of

23  material fact as to whether the defendant's proffered reasons for its actions are a mere

24  pretext for unlawful discrimination.  Hawn, 615 F.3d at 1155.  A plaintiff may do this by

25  producing either direct evidence of discriminatory motive, which need not be substantial,

26  or circumstantial evidence that is "specific and substantial" evidence of pretext.  Godwin v.

27  Hunt Wesson, Inc., 150 F.3d 1217, 1221-22 (9th Cir. 1998).  If the plaintiff succeeds in

28

United States District Court

For the Northern District of California

1   demonstrating a genuine issue of material fact as to whether the reason advanced by the

2   employer was a pretext for discrimination, then the case proceeds beyond the summary

3   judgment stage.  See Reeves, 530 U.S. at 143.

4       A plaintiff's subjective belief that his termination was unnecessary or unwarranted is

5   not sufficient to create a genuine issue of material fact.  See Cornwell v. Electra Cent.

6   Credit Union, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006).  In addition, "[a] plaintiff cannot

7   defeat summary judgment simply by making out a prima facie case."  Wallis v. J.R. Simplot

8   Co., 26 F.3d 885, 890 (9th Cir. 1994) (quoting Lindahl v. Air France, 930 F.2d 1434, 1437

9   (9th Cir. 1991)).  Rather, the plaintiff must produce "specific, substantial evidence of

10  pretext."  Id. (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983)).

11      With this legal overview in mind, the court's analysis of each of the substantive

12  claims asserted by plaintiffs – on a plaintiff by plaintiff basis – is as follows.

13          1.    Title VII Disparate Treatment Claim (Fifth Cause of Action)

14      All four plaintiffs assert that the City is liable for disparate treatment discrimination,

15  pursuant to 42 U.S.C. § 2000e-2(a)(1).  See TAC, ¶¶ 95-101.  Plaintiffs contend that the

16  City has treated them differently on account of their race, by subjecting them to harsher

17  discipline than that imposed on non-APA employees, and by declining to appoint them to

18  'acting' supervisor roles that would predispose them to promotions.  Defendants, however,

19  assert that such claims fail, because plaintiffs have failed to come forward with any

20  evidence of either a prima facie case of disparate treatment discrimination, or assuming

21  that they can, any evidence of pretext in response to defendants' non-discriminatory reason

22  for taking the disciplinary measures complained of.

23      To establish a prima facie case of disparate treatment, each employee must show

24  (1) that he/she belongs to a protected class, (2) was performing according to his/her

25  employer's legitimate expectations, (3) suffered an adverse employment action, and (4)

26  that other employees with qualifications similar to his/her own were treated more favorably.

27  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Godwin v. Hunt

28

14

United States District Court
For the Northern District of California

1  Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

2          a.     Chin's disparate treatment claim

3          Chin asserts disparate treatment based on the following adverse actions taken by

4  the City: failure to appoint him to an 'acting' supervisor role; the March and September

5  2007 written reprimands based upon alleged safety and security breaches; and the

6  February 2010 denial of promotion to a permanent supervising counselor position.  See

7  Opp. Br. at 18:10-16; see also Chin Decl., ¶ 16.

8          As a preliminary matter, to the extent Chin's allegations predate February 5, 2008,

9  they are time-barred.  Chin's underlying EEOC charge was filed with the EEOC on

10  December 2, 2008 (which the EEOC then cross-filed with the DFEH).  See Chin Decl., Ex.

11  K.[1]  Because Title VII establishes a limitations period that extends backwards 300 days

12  before the date of the charge (applicable also to charges cross-filed with the DFEH),

13  plaintiffs' allegations must fall within 300 days of the December 2, 2008 EEOC charge to be

14  actionable – i.e., February 5, 2008.  See 42 U.S.C. § 2000e-5(e)(1).  As applied to Chin's

15  allegations here, this would preclude consideration of the March and September 2007

16  written reprimands, as well as any alleged failure to appoint to an 'acting' role or promotion

17  denial, to the extent it occurred prior to February 5, 2008.  Plaintiffs, for their part, have

18  blithely asserted that Chin's rebuttal to his September 2007 written reprimand tolls the

19  statute of limitations with respect to Chin's EEOC charge; however, Chin invokes no

20  relevant legal authority in support of his position, and argues only in the broadest and

21  conclusory of fashions that the court should toll the limitations period.  Without more, this

22  argument is unpersuasive.

23          Thus, the question at issue before the court is whether Chin has come forward with

24  a prima facie case of disparate treatment discrimination, based on the failure to appoint him

25

26          [1]        The court notes that Chin, Chen, and Leiato's underlying "EEOC" charges are
    copies of their Department of Fair Employment and Housing discrimination charge.  See Chin
27  Decl., Ex. K; Chen Decl., Ex. E; Leiato Decl., Ex. J.  Neither party disputes, however, that
    these DFEH charges constitute the charge filed before the EEOC, or that the charges were
28  cross-filed, and are for that reason referred to by the parties as the "EEOC" charge.

15

United States District Court

For the Northern District of California

1   to an acting supervisor role, or the February 2010 denial of promotion.

2       With respect to the former, plaintiffs have not introduced evidence raising a triable

3   issue as to a prima facie claim of discrimination.  To satisfy the requisite showing, plaintiffs

4   rely on Chin's declaration, which states that he "told supervisory staff Alardo and Recinos

5   [he] wanted to be appointed to acting supervisory roles," as well as statistical evidence that

6   purportedly demonstrates that no APA employees have been appointed to acting positions

7   from January 1, 2006 through June 30, 2008.  See Chin Decl., ¶ 16; Declaration of Dow

8   Patten ISO MSJ Opp. ("Patten Decl."), Ex. J.  However, Chin's testimony is only that he

9   told supervisors that he *wanted* to be appointed to acting supervisory roles; his testimony is

10  silent as to the date(s) when Chin requested the appointment or the dates when such

11  appointment became available, what his supervisors' response to Chin's statement was, or

12  whether they understood his statement to be a request, nor does it address whether the

13  JPD actually refused to appoint him to a supervisory role in response to Chin's request to

14  do so.  There is thus no concrete basis upon which to conclude that Chin ever suffered any

15  adverse action, based on a failure to appoint him to an acting supervisor role.

16      To the extent that Chin relies on statistical evidence, moreover, the statistical

17  evidence fails to establish that other employees with qualifications similar to his own were

18  treated more favorably than Chin.  Indeed, the evidence set forth in Exhibit J to the Patten

19  Declaration – which consists of a summary and assortment of EEO statistics regarding

20  disciplinary and other facts (the significance of which goes unexplained by any of the

21  plaintiffs) – is silent as to what other employees requested appointment to 'acting

22  supervisor' roles and when such requests were made, or the JPD's response to such

23  requests.  Additionally, there are no details provided establishing whether any acting

24  supervisor appointments were actually made during the relevant time period, and if there

25  were, the race or nationality of the appointees.  At best, the statistics include a compilation

26  of names and corresponding race and nationality of employees at JPD generally who

27  appear to have been given official "promotions" to various positions.  However, not only

28

**United States District Court**
For the Northern District of California

1   does this compilation fail to address the presence or lack of acting supervisor

2   appointments, but even if it did, it would still fail to address the critical question whether any

3   other individuals who had been promoted to acting supervisor positions were similarly

4   situated to Chin (i.e., equally qualified).  Thus, and in sum, Chin fails to introduce any

5   triable issues of material fact in support of a prima facie case of discrimination, based on

6   the failure to appoint to an acting supervisor role.

7        With respect to the denial of promotion claim, Chin asserts that in February 2010, he

8   was denied a promotion interview after taking a written exam, whereas non-APA

9   employees were allowed to pass from the exam stage to the interview stage in the

10  promotion process, and one of them eventually earned the promotion.  However, Chin does

11  not dispute the following: that he and other candidates took a take-home written

12  examination in order to qualify for the promotion; that based on these scores, JPD Human

13  Resources staff placed the applicants in three ranks; that only the applicants in the first

14  rank were invited to participate in the next step of the hiring process, which consisted of

15  interviews; and that Chin's written examination score placed him in the second rank of

16  applicants, and therefore was the reason he was not interviewed.  See Brooks Houston

17  Decl., ¶¶ 3-5, Exs. A-B.

18       These facts fall short of establishing a triable issue of fact as to a prima facie case of

19  disparate treatment.  Specifically, these facts make it impossible for Chin to establish that

20  other employees with qualifications similar to his own were treated more favorably.  Indeed,

21  the facts tend to establish that those non-APA employees who secured interviews, and

22  were then promoted, were able to do so because they were *more* qualified than Chin –

23  based on the written take home test.  Additionally, he fails to point to any evidence that any

24  non-APA employee in the second rank was interviewed or promoted when he was not.

25  Chin attempts to materially dispute the evidence by arguing that the written test taken to

26  determine promotion eligibility was not "in any fashion anonymous."  Chin notes, for

27  example, that the Brooks Houston declaration states only that the test was "intended" to be

28

**United States District Court**

For the Northern District of California

1   anonymous, and that supervisor Doyle scored the test, but has not submitted a declaration

2   that the test *was* anonymous.  However, Chin submits no tangible evidence actually

3   refuting that the test was anonymous – or intended to be anonymous.  And he has

4   submitted no evidence that even if the test was not anonymous, supervisor Doyle

5   intentionally mis-graded the test results to ensure that he did not place in the first rank.

6   Plaintiff merely suggests the possibility that such is the case.  This suggestion alone is

7   inadequate to raise a triable issue.

8        Even if, however, Chin were able to satisfy the elements of a prima facie case

9   based on the February 2010 denial of promotion, he has nonetheless failed to materially

10  dispute defendants' articulation of a legitimate non-discriminatory reason for his promotion

11  denial (i.e., that the scoring system placed Chin into a lesser qualified category), with any

12  evidence of pretext.

13       In sum, and for all the foregoing reasons, the court hereby GRANTS the City's

14  motion for summary judgment with respect to Chin's Title VII claim alleging disparate

15  treatment against the City.

16            b.    Chen's disparate treatment claim

17       Chen argues that he suffered disparate treatment, based solely on the thirty day

18  suspension he received in April 2007.  The underlying facts in relation to the suspension do

19  not appear to be disputed:  Chen allowed a detainee to leave his room, which allowed the

20  detainee to attack another detainee; Chen and his coworker Scott Kato then allowed

21  themselves to be locked in a room where they placed the escaped detainee; Chen did not

22  carry a radio or a scan pen that could be used to call for help; Chen carried a cell phone but

23  did not use it to call for help; Chen did not report the incident to his supervisor or to medical

24  staff; Chen asked and convinced Kato not to file an incident report; and Chen did not file

25  the required report until the episode came to the attention of other staff.  See Young Decl.,

26  ¶ 4, Ex. B; Garcia Decl., ¶ 3, Ex. A.  Chen contends, however, that his discipline was

27  evidence of disparate treatment because non-APA counselors were treated more favorably

28

United States District Court
For the Northern District of California

1   with respect to similar incidents.

2          In support of his position, Chen points out: that in 1993, a non-APA counselor incited

3   a riot and received no discipline; that in 2007, a non-APA counselor escorted three

4   detainees through an unsecured area without handcuffs, and was suspended for one day;

5   that in 1990 a non-APA counselor allowed a juvenile to escape and received a letter of

6   reprimand; and that in 1992, a non-APA counselor took juveniles off premises and received

7   only a 5 day suspension. See Declaration of Dow Patten ISO MSJ Opp. ("Patten Decl."),

8   Ex. J. With respect to the incident leading to Chen's suspension specifically, Chen points

9   out that his non-APA counterpart in February 2005 exhibited violent behavior in the

10  workplace and submitted inaccurate reports about the incident, and only received a 5 day

11  suspension. See Patten Decl., Ex. J. Finally, Chen relies on the JPD's PMK deposition, in

12  which the PMK testified that the only 30 day suspensions that have been issued aside from

13  Chen, were all for non work-related criminal activity. See Patten Decl., Ex. A at 20:9-

14  35:25).

15         Chen's claim, however, cannot overcome the procedural hurdle placed in front of it

16  by Title VII's statute of limitations. The same limitations period that applies to Chin's

17  claims, applies to Chen's claims. Chen's lawsuit is founded upon an EEOC charge filed on

18  October 14, 2008, and which was cross-filed with the DFEH. Since 300 days before

19  October 14, 2008 was December 19, 2007, any adverse action based on events before this

20  date are time-barred. As with Chin's arguments, plaintiffs make no persuasive response to

21  this procedurally meritorious objection, other than to conclusorily assert, without reference

22  to relevant case law, that the limitations period should be tolled. Absent a more persuasive

23  showing by plaintiffs, the court concludes that conduct that pre-dates December 19, 2007 is

24  not properly before the court. And since Chen's claim with respect to the thirty day

25  suspension he received in April 2007 is premised on conduct that occurred prior to

26  December 19, 2007, Chen fails to plead any actionable conduct under Title VII.

27         However, even if the court were to consider the merits of Chen's claim, Chen

28

United States District Court

For the Northern District of California

1  nonetheless fails to demonstrate a triable issue of fact as to a prima facie case of disparate

2  treatment discrimination, or as to pretext.  Beginning with his prima facie case, and

3  crediting Chen's contention that he was generally performing his job in a satisfactory

4  manner, Chen has failed to introduce evidence establishing that similarly situated

5  individuals were treated more favorably.  To be sure, Chen has relied upon purportedly

6  similar incidents that span from 1990 to 2007, and which are set forth in a compilation of

7  EEO statistics, in order to demonstrate that other counselors were similarly situated.  See

8  Patten Decl., Ex. J.  But these incidents, the significance of which is unexplained by

9  plaintiffs, are far too isolated and random to support such a claim.  Not only are many of the

10  earlier incidents too far apart temporally to be considered truly 'similar' to plaintiff, but none

11  appear to deal with facts similar to those alleged by plaintiff here.  Indeed, the specific

12  details of the comparative incidents are even provided, such that a true basis for

13  comparison exists.

14       Moreover, even if a prima facie case were stated, a case of pretext would not be.

15  Since Chen does not dispute his conduct that was the basis for discipline, nor does he

16  dispute that discipline was warranted, he cannot dispute that defendant had a legitimate

17  non-discriminatory reason to suspend him.  In the face of this, plaintiffs must come forward,

18  as defendant notes, with "substantial and specific" evidence of pretext.  This, Chen has not

19  done.

20       Accordingly, the court GRANTS defendant's motion for summary judgment as to

21  Chen's disparate treatment claim under Title VII.

22            c.    Lam's disparate treatment claim

23       Lam contends that he suffered disparate treatment, based on the following adverse

24  actions: he was repeatedly placed in high risk situations; he received an April 2007

25  admonishment for refusing to review training materials with supervisor Radogno; and he

26  was sent home from the job in June 2008 for refusing to engage in a high risk training

27  exercise while on a work restriction.  See Lam Decl., ¶¶ 24-25.  Lam also asserts that he

28

United States District Court

For the Northern District of California

1    asked to be placed in the acting supervisor position, but has never received such an

2    appointment. Id., ¶ 25.  These are all instances of disparate treatment, he contends,

3    because non-APA counselors were not exposed to the same treatment.

4         As a preliminary matter, defendant points out that the relevant limitations period for

5    Lam's disparate treatment claim begins on January 13, 2006.  See Ofierski Decl., Ex. E.

6    Since Lam complains of discriminatory conduct that falls within this limitations period, there

7    does not appear to be any procedural bar to his claims.

8         Turning to the merits of Lam's claim, the City is correct that Lam fails to establish a

9    prima facie case of discrimination in connection with the claim that he was repeatedly

10   placed in high risk situations.  Lam himself cites no specific evidence in support of this

11   claim anywhere in his opposition brief.  His complaint does allege that he was "ordered

12   alone to ambulance high-risk Spanish detainees who were injured in a gang fight."  TAC, ¶

13   20.  But again, he provides no evidence of such an incident.  Defendant, by contrast, points

14   to Lam's testimony at his deposition stating that the incident in question involved Lam riding

15   in the back of an ambulance together with an emergency medical technician, a single

16   detainee cuffed to a stretcher, and Lam doing no more during the trip than observing the

17   situation.  See Ofierski Decl., Ex. G at 115:21-121:14.  These facts are undisputed by Lam.

18   The court concludes that these facts cannot support Lam's contention that there was any

19   "adverse" employment action taken against him by the City, such that a prima face case

20   with respect to disparate treatment may be based thereon.

21        Regarding Lam's April 2007 admonishment for refusing to review training materials,

22   Lam also fails to establish a prima facie case.  Indeed, Lam's opposition mentions hardly

23   anything about the incident at all, and thus fails to introduce specific articulable facts about

24   the incident from which to conclude that a prima facie case has been shown.  Even if a

25   prima facie case could be shown, however, defendant has correctly noted that undisputed

26   facts establish legitimate, non-discriminatory reasons for the April 2007 admonishment:

27   when Radogno asked Lam to meet with him to review the final informational packet in July

28

21

1    2006, Lam refused to do so on grounds that he had not had sufficient time to review it

2    alone; and when told that the purpose of the meeting was for both Lam and his supervisor

3    to review the packet materials together, Lam then summoned his union representative, who

4    encouraged Lam not to review the packet with Radogno, and Lam thereafter refused the

5    request (although the training session with Lam was completed without incident the very

6    next day).  See Radogno Decl., ¶ 6, Ex. E.  Thus, Lam's refusal to review materials with

7    Radogno was clearly established, and his resulting admonishment was legitimate and non-

8    discriminatory, in the absence of any evidence of pretext.  Yet Lam has not articulated, in

9    response to defendant's showing, any evidence suggesting that the City's basis for its April

10   2007 admonishment was pretextual.

11        With respect to the June 2008 incident in which Lam was purportedly sent home for

12   refusing to engage in high risk training while on a work restriction, Lam introduces

13   absolutely no evidence of this.  He submits no evidence that supports or explains his claim

14   that he was on a work restriction in June 2008, was ordered to do high risk training while so

15   restricted, and/or was sent home for refusing to do the training.  Defendant, by contrast,

16   submits the following evidence that is undisputed by Lam: in June 2008, Lam objected to

17   his assigned post because he would have to work with a colleague named Cooks, and

18   Cooks had previously called Lam a "smartass"; the JPD ordered him to report to work

19   notwithstanding Lam's objections; Lam refused to report to work; and Doyle ordered Lam

20   home and without pay for 4 hours.  See Castellanos Decl., ¶ 3, Ex. A.  When Lam

21   disobeyed direct orders to report to his post, Doyle ordered Lam home.  Lam then filed a

22   complaint alleging that Doyle's order was in retaliation for his numerous previous

23   complaints.  Castellanos Decl., ¶ 3, Ex. A.

24        These facts demonstrate the absence of any high risk training or any work

25   restriction.  Furthermore, there is simply no evidence in these facts suggesting a

26   discriminatory animus by the City that was directed toward Lam, or that any other similarly

27   situated group of persons was treated more favorably.  In sum, there is no prima facie case

28

                                        22

1    established by Lam, let alone any evidence of pretext.

2         Finally, Lam asserts that he asked to be placed in the acting supervisor position, but

3    has never received such an appointment. Lam Decl., ¶ 25.  As did Chin, Lam relies on his

4    declaration, which states that he "asked supervisory staff Richardson to be placed in the

5    'acting' position, but never received an appointment."  Lam's testimony is only that he

6    asked to be appointed to acting supervisory roles; his testimony is silent as to the date

7    when he requested the appointment, the date any such appointments were available, what

8    his supervisor's response to his request was, whether his request was officially considered,

9    and who got the appointment(s) in his stead.  Thus, for the same reasons already

10   expressed in connection with the court's discussion of Chin's disparate treatment claim,

11   there is no basis upon which to conclude that Lam ever suffered any adverse action.  And

12   since Lam – unlike Chin – does not expressly rely on any statistical evidence for support of

13   his claim that he was unlawfully denied an acting supervisor appointment, there is no other

14   evidence articulated by Lam that could support his claim that he suffered disparate

15   treatment based on a failure to appoint him to an acting supervisor role.

16        Moreover, even if the court were to construe Lam's claim as resting on the same

17   statistical evidence relied upon by Chin, the same reasons given for the evidence's failure

18   to support Chin's claim – namely, a total lack of explanation or facts establishing that Lam

19   was treated differently from employees similarly situated when he sought appointment to an

20   acting supervisor role – apply here, too.  In sum, therefore, there are no triable issues of

21   fact with respect to Lam's claim that he suffered disparate treatment on the basis of his

22   race, as evidenced by the failure to appoint him to an acting supervisor role.

23        Accordingly, Lam has failed to introduce a triable issue of fact as to disparate

24   treatment discrimination under Title VII, and defendant's motion for summary judgment as

25   to this claim is GRANTED.

26             d.    Leiato's disparate treatment claim

27        Leiato asserts that she suffered disparate treatment, based on the following adverse

28

23

1   actions: her 15 day suspension following the May 2007 incident when she used profanity in

2   dealing with a detainee; and Juvenile Hall Director Ratcliff-Powell's decision in December

3   2008 to send Leiato home without pay.  Leiato contends that other non-APA counselors

4   engaged in numerous and repeated acts of inappropriate language, but were never

5   disciplined as harshly, and she also suggests that she was sent home from work in

6   retaliation for making complaints.

7        A portion of Leiato's claim, however, is time-barred.  Leiato's suit is premised upon a

8   charge she filed with the DFEH on October 21, 2008.  Counting backwards for 300 days,

9   Leiato's allegations must post-date December 26, 2007, in order to be actionable.  See 42

10  U.S.C. § 2000e-5(e); Green v. Los Angeles Cty. Superintendent of Schs., 883 F.2d 1472,

11  1473 (9th Cir. 1989)(300 day limitations period applicable where complainant initially

12  institutes proceedings with a state or local agency).  This means that Leiato's claim, to the

13  extent premised on the May 2007 incident, is time-barred, and only the December 2008

14  decision to send her home is actionable.

15       With respect to the December 2008 decision to send Leiato home without pay,

16  Leiato does not dispute that she was thirty minutes late on that day, and that Juvenile Hall

17  regulations authorize the director to send an employee home without pay who is more than

18  fifteen minutes late.  See Ofierski Decl., Ex. I at 64:21-65:15; id., Ex. J at 54:20.  These

19  facts preclude a finding that Leiato was acting according to her employer's legitimate

20  expectations at the time she was subjected to the purportedly discriminatory discipline.

21  Furthermore, plaintiff has submitted no evidence demonstrating that other similarly situated

22  employees were treated more favorably in a similar factual scenario.  Accordingly, no prima

23  facie case as to this incident has been stated.

24       Even if Leiato had been able to introduce a material dispute of fact as to a prima

25  facie case of discrimination as to both incidents in question, moreover, she has still failed to

26  introduce specific and substantial evidence of pretext.  Plaintiffs do not materially dispute

27  that the City – particularly in light of the foregoing undisputed evidence – had a legitimate

28

24

United States District Court

For the Northern District of California

1   non-discriminatory reason to discipline her for her tardiness.  Yet plaintiffs have submitted

2   no evidence that suggests that the City's non-discriminatory reasons are not plausible, or

3   that the City was somehow motivated by discriminatory animus.

4          In sum, therefore, Leiato's disparate treatment claims, to the extent they are

5   actionable and within the limitations period, fail to raise a triable issue of fact as to a prima

6   facie case of discrimination, or pretext.  Accordingly, the City's motion for summary

7   judgment with respect to Leiato's Title VII disparate treatment claim is GRANTED.

8          3.     Title VII Harassment Claim (Sixth Cause of Action)

9          Only two of the plaintiffs here – Lam and Chen – assert a hostile work environment

10  claim, claiming harassment on the basis of race.  To prevail on a hostile workplace claim

11  premised on race, a plaintiff must show: (1) that he was subjected to verbal or physical

12  conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct

13  was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and

14  create an abusive work environment.  See Fuller v. City of Oakland, 47 F.3d 1522, 1527

15  (9th Cir.1995).  The more outrageous the conduct, the less frequent must it occur to make

16  a workplace hostile.  See Ellison v. Brady, 924 F.2d 872, 878 (9th Cir.1991).  To determine

17  whether conduct is sufficiently severe or pervasive to violate Title VII, the court looks at all

18  surrounding circumstances, including frequency, severity, whether the alleged conduct is

19  threatening or humiliating, or merely an offensive utterance, and whether it interferes with

20  an employee's work performance.  See, e.g., Vasquez v. City of Los Angeles, 349 F.3d

21  634, 649 (9th Cir. 2004).  Finally, the allegations of a racially hostile workplace must be

22  assessed from the perspective of a reasonable person belonging to the same racial or

23  ethnic group as the plaintiff.  See Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101,

24  116 (2002); McGinest v. GTE Service Corp., 360 F.3d 1103, 1115 (9th Cir. 2004).

25          a.     Lam's harassment claim

26          Plaintiffs' opposition omits reference to any specific instances of harassment or

27  hostile workplace discrimination.  The City, however, highlights two incidents of purported

28

25

United States District Court

For the Northern District of California

1    discrimination that Lam testified to in his deposition: one occasion on which assistant

2    director Diestel once said in reference to Lam that "if he does it again, I'm going to fire him;"

3    and on another occasion, senior counselor Young had a "mean demeanor" when he spoke

4    with Lam.  See Ofierski Decl., Ex. G at 140:6-143:21; 271:21-273:5.

5         The court concludes that this comment by one supervisor and a "mean demeanor"

6    of another supervisor, though unwelcome, did not amount to verbal or physical conduct of a

7    racial nature and was not sufficiently severe or pervasive to alter the conditions of Lam's

8    employment.  Further, no reasonable APA counselor would conclude otherwise.  To be

9    sure, the comment/demeanor demonstrate that there is tension between the parties; but

10   this cannot be said to be evidence of any race based harassment.  In short, it simply

11   cannot be said that the comment/demeanor produced an "unreasonably abusive or

12   offensive work-related environment or adversely affected [Lam's] ability to do [his] job."

13   See, e.g., Davis v. Monsanto Chem. Co., 858 F.2d 345, 350 (6th Cir. 1988).

14        Thus, the City's motion for summary judgment with respect to Lam's harassment

15   and hostile work environment claim, is GRANTED.

16             b.    Chen's harassment claim

17        As with Lam, plaintiffs' brief fails to cite to any specific instances of harassment or

18   hostile workplace discrimination vis a vis Chen.  The City, for its part, highlights the

19   following incidents of purported "harassment":  senior counselor Williams used profanity

20   when he spoke to Chen in January 2007 and November 2008 (stating "we have staff who

21   don't know how to use the fucking radio");  senior counselor Radogno "accused" or

22   "scolded" Chen once in October 2006 for failing to properly perform a task; and senior

23   counselor Young "scolded" Chen in 2004 by shouting "why are you opening the door, da,

24   da, da, da" and in 2008, told Chen not to watch television while on the job.  See Ofierski

25   Decl., Ex. L at 34:8-36:5, 42:16-45:13, 48:17-50:16, 55:5-19, 58:6-59:2.  The City also

26   highlights the fact that Chen testified in his deposition that neither Williams, nor Radogno,

27   nor Young, ever said anything suggesting anti-Chinese bias, or made racial comments.

28

See id. at 37:7-10, 38:3-6, 39:1-9, 53:3-14, 68:13-19.

As a preliminary matter, defendant correctly argues once again that any allegations that precede December 19, 2007 are time-barred, and additionally, that the allegations are not actionable, because none were raised in the underlying discrimination charge.  See Ofierski Decl., Ex. M at Ex. II.  Thus, plaintiffs' allegations relating to Williams' use of profanity in January 2007, Radogno's scolding of Chen in October 2006, and Young's scolding of Chen in 2004, are precluded from consideration as grounds for harassment. Moreover, as to the scope of the underlying charge filed with the EEOC, defendant is also correct that the charge does not provide notice of any harassment claims.  Rather, it is entirely predicated upon claims by Chen that he was subjected to "unequal discipline." See id.  Thus, Chen has failed to exhaust administrative remedies with respect to his harassment charge, and his claim fails on this ground.

Even considering the actual substance of all the incidents highlighted by defendant, however, none suggest any bias or reflect racially-motivated comments.  And Chen himself testifies that the same individuals who he complains of, never said anything explicitly suggestive of any racial bias or animus.  Thus, as with Lam, plaintiffs have failed to highlight any "unreasonably abusive or offensive work-related environment or adversely affected [Chen's] ability to do [his] job."  See, e.g., Davis, 858 F.2d at 350.

The court should accordingly GRANTS the City's motion for summary judgment as to Chen's harassment claim, as well.

    4.    Title VII Retaliation Claim (Seventh Cause of Action)

Plaintiffs Lam, Chen, and Leiato assert that JPD targeted them for discrimination on the basis of their APA status, in retaliation for various complaints that all made.  Generally, in order to make out a prima facie case of retaliation, a plaintiff must establish "that [he or she] acted to protect [his or her] Title VII rights, that an adverse employment action was thereafter taken against [him or her], and that a causal link exists between those two events."  See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir.1994).

United States District Court

For the Northern District of California

a.   Lam's retaliation claim

Lam notes that he filed complaints – which would constitute "protected activity" – with JPD and with the Civil Service Commission on April 30, 2008, May 28, 2008, June 2, 2008, and June 16, 2008.  See Lam Decl., Exs. K, O-Q.  In terms of the purported retaliatory conduct, however, plaintiffs' brief is silent and it is left to defendant to specifically highlight the nature of what such retaliatory conduct could be – which defendant does by highlighting two instances: Doyle's decision to send Lam home when Lam refused to work with fellow counselor Cooks because Cooks had previously called Lam a "smartass;" and the reprimand that Lam received from senior counselor Singh in November 2009, for disclosing the identity of a detainee in a public record Lam submitted to the Civil Service Commission.  See Castellanos Decl., ¶ 3, Ex. A; Houston Decl., ¶ 7, Ex. D.

The first incident – Doyle's decision to send Lam home early for Lam's refusal to work with Cooks – occurred in June 2008, and technically falls within the proper temporal time frame such as to suggest a possible causal link between Lam's filing of written complaints, and the decision to send him home.  However, given the court's prior analysis of the foregoing incident in the discrimination context, and the court's finding that the incident fails to suggest any discriminatory intent by Lam's supervisor and is supported by a legitimate business reason at any rate, the court finds the temporal proximity insufficient alone to establish a causal connection.  Moreover, Lam does not provide any evidence other than his complaints and omits *any* argument with respect to the foregoing incident in his brief.  As such, Lam cannot establish a viable claim for retaliation based on this June 2008 incident.

The second incident – i.e., the reprimand that Lam received in November of 2009 – compels a similar analysis.  While a written reprimand may properly be considered an adverse employment action, the November 2009 incident occurred more than a *year* after the filing of Lam's last June 16, 2008 complaint.  The two incidents therefore lack a sufficiently close temporal connection to suggest a causal link between Lam's 2008 written

28

United States District Court

For the Northern District of California

1    complaints, and the November 2009 reprimand.  Moreover, Lam does not dispute that the

2    reprimand was issued for his failure to redact detainee information in a public filing, or that

3    he in fact failed to do as much – facts that demonstrate that the JPD had a legitimate non-

4    retaliatory reason for issuing the reprimand, and which only further weaken the case for any

5    causal link between the two incidents.

6       In short, Lam's substantive claims with respect to retaliation, to the extent they are

7    based on what defendant has identified as the basis for Lam's claim, since Lam has not

8    bothered to do so, do not raise triable issues of fact.  Thus, the City's motion for summary

9    judgment as to Lam's retaliation claim is GRANTED.

10       b.     Chen's retaliation claim

11       Once again, plaintiffs fail to introduce specific examples or incidents of retaliation

12    taken with respect to Chen.  Defendant, however, points to the following retaliatory incident

13    about which Chen testified in his deposition:  that senior counselor Young supported

14    Chen's 30 day suspension in November 2007, in retaliation for Chen's filing of a

15    discrimination complaint with JPD.  See Ofierski Decl., Ex.

16       Preliminarily, defendant again asserts that this retaliation allegation cannot proceed

17    for failure to exhaust administrative remedies, since no retaliation claim was made in

18    connection with the underlying EEOC charge filed by Chen.  This is correct.  As already

19    noted, the EEOC charge filed by Chen is solely based on the "unequal discipline" that Chen

20    purportedly received at the hands of his supervisors, and makes no reference to any

21    retaliatory conduct.  As such, Chen has failed to exhaust his administrative remedies in

22    connection with this claim, and it fails on this basis.

23       Even addressing the merits of the claim, it would nonetheless fail as nonsensical.

24    As defendant notes, the JPD complaint that Chen filed was filed in June 2008.  See Ofierski

25    Decl., Ex. M at Ex. FF.  This was thus nearly a year *after* the November 2007 suspension.

26    Since the complaint for which he was supposedly retaliated against occurred after the

27    suspension that constituted the retaliation, there can be no causal link between any

28

United States District Court

For the Northern District of California

1  adverse action and a protected activity.

2      Thus, summary judgment in the City's favor as to Chen's retaliation claim, is

3  therefore GRANTED.

4              c.      Leiato's retaliation claim

5      Leiato asserts a retaliation claim based on two allegations: first, that she was placed

6  in danger when she was assigned to work with two newly hired on-call counselors; second,

7  that supervisor Ratcliff-Powell retaliated against her when Ratcliff-Powell refused Leiato's

8  request to leave work two hours early to attend a "family conference," a "traditional and

9  cultural thingy."  See Ofierski Decl., Ex. J at 111:14-114:25, 123:8-127:23.

10     These allegations fail to establish any prima facie case of retaliation.  Neither

11  plaintiff's assignment to work with two newly hired on-call counselors, nor the refusal of

12  Leiato's request to leave work two hours early, constitute any material change or alteration

13  in the terms of plaintiff's employment, such that an adverse employment action has been

14  stated.  Moreover, even if they did constitute adverse actions, plaintiff provides no

15  argument or evidence establishing that these actions were taken in a sufficiently close

16  temporal time frame to a protected activity, so as to suggest retaliation.  To be sure, no one

17  disputes that Leiato filed written complaints throughout 2008, or that these complaints

18  constitute protected activity, see Leiato Decl., Exs. E-J.  However, Leiato has not attempted

19  to suggest a causal link between that activity and either of the foregoing incidents.  Indeed,

20  the denial of Leiato's request to leave work 2 hours early occurred in July 2010, and

21  Leiato's filing of several complaints occurred from May 2008 through October 2008.  This

22  suggests a *lack* of causal relationship.

23     In sum, Leiato's retaliation claim falls woefully short of establishing a prima facie

24  case of retaliation.  Accordingly, the City's motion for summary judgment is GRANTED on

25  this ground.

26         4.      Section 1983 Claim (First Claim for Relief)

27     Finally, all plaintiffs have asserted a section 1983 claim against the City, based on

28

30

United States District Court

For the Northern District of California

1    the City's alleged violation of the Equal Protection Clause of the Fourteenth Amendment.

2    See TAC, ¶¶ 61-65.  To state a claim under section 1983  for a violation of the Equal

3    Protection Clause, a plaintiff "must show that the defendants acted with an intent or

4    purpose to discriminate against the plaintiff based upon membership in a protected class,"

5    and that plaintiff was treated differently from persons similarly situated.  See Barren v.

6    Harrington, 152 F.3d 1193, 1194 (9th Cir.1998); Lee v. City of Los Angeles, 250 F.3d 668

7    (9th Cir. 2001); see also Washington v. Davis, 426 U.S. 229, 239-40 (1976).  As the parties

8    here note, a plaintiff may satisfy this showing by alleging four separate elements: (1) that

9    the plaintiff was treated differently from others similarly situated; (2) this unequal treatment

10   was based on an impermissible classification; (3) that the defendant acted with

11   discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a

12   result of the discriminatory classification.  See, e.g., Pers. Adm'r of Mass. v. Feeney, 442

13   U.S. 256, 279 (1979); see also T.A. ex rel. Amador v. McSwain Union Elementary Sch.

14   Dist., 2009 WL 1748793 (E.D. Cal. 2009).

15        In the equal protection context, just as in a Title VII disparate treatment case, the

16   fundamental question revolves around the plaintiff's ability to demonstrate a discriminatory

17   "purpose" or intent (which need not be proved by direct evidence).  To that end, generally,

18   when analyzing claims of disparate treatment in employment under § 1981 or § 1983, a

19   district court is guided by Title VII analysis.  See St. Mary's Honor Center v. Hicks, 509 U.S.

20   502, 506 n. 1 (1993)(applying Title VII law regarding employment discrimination and

21   retaliation to cause of action under 42 U.S.C. § 1983); Surrell v. California Water Serv. Co.,

22   518 F.3d 1097, 1103, (9th Cir. 2008); Mustafa v. Clark County Sch. Dist., 157 F.3d 1169,

23   1180 (9th Cir.1998); see also Lowe v. City of Monrovia, 775 F.2d 998, 1010-11 (9th Cir.

24   1985) ("[D]etermining the existence of a discriminatory purpose demands a sensitive

25   inquiry into such circumstantial and direct evidence of intent as may be available").

26        Here, plaintiffs rely on the same evidence they submit in support of their Title VII

27   claims, for support of their section 1983 claim.  As a preliminarily matter, however, the court

28

31

United States District Court

For the Northern District of California

1    notes that the statute of limitations applicable to section 1983 actions is two years.  See

2    Wilson v. Garcia, 471 U.S. 261 (1985)(forum state's statute of limitations for personal injury

3    torts sets forth appropriate period for determining statute of limitations under section ),

4    superseded by statute on other grounds, as stated in Jones v. R.R. Donnelley & Sons Co.,

5    541 U.S. 369 (2004); Cal. Civ. Proc. Code § 335.1 (establishing two year limitation for the

6    filing of civil claims).  Thus, and applying the foregoing limitations period here, plaintiffs may

7    only proceed with respect to their section 1983 claim, to the extent premised on allegations

8    that post-date October 10, 2006.

9         Ultimately, the same deficiencies that preclude a finding that triable issues of

10   material fact exist in connection with plaintiffs' Title VII claims, exist with respect to plaintiffs'

11   section 1983 claim.  Namely, and for all the reasons highlighted in connection with the

12   court's discussion of plaintiffs' Title VII claims, plaintiffs' evidence fails to demonstrate that

13   plaintiffs – each of them – were treated differently from others similarly situated, based on

14   an impermissible classification.  In other words, plaintiffs' evidence fails to raise a triable

15   issue as to the existence of a discriminatory "purpose" in the actions taken by plaintiffs' JPD

16   supervisors.  As such, plaintiffs do not prevail in establishing a triable issue as to their

17   section 1983 claims.

18        Moreover, to establish municipal liability of the City under section 1983, plaintiffs

19   must show: (1) that they possessed a constitutional right of which they were deprived; (2)

20   that the municipality had a policy; (3) that this policy amounts to deliberate indifference to

21   the plaintiffs' constitutional rights; and (4) that the policy is the moving force behind the

22   constitutional violation.  Plumeau v. Sch. Dist. #40 County of Yamhill, 130 F. 3d 432, 438

23   (9th Cir. 1997).  There can be no municipal liability without an underlying constitutional

24   violation.  See Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994).

25        Here, because plaintiffs fail to establish the existence of triable issues with respect to

26   any equal protection violation that underlies their section 1983 claims, they also fail to

27   establish the first of the elements necessary for liability against the City – i.e., a

28

United States District Court

For the Northern District of California

1 "constitutional violation." Thus, and although plaintiffs spent considerable time in their brief

2 and at the hearing arguing about the City's pattern and practice of discrimination, the

3 court's analysis of any "pattern and practice" is additionally unnecessary, as it is ultimately

4 immaterial.

5      In sum, and for the foregoing reasons, defendant's motion for summary judgment

6 with respect to plaintiffs' section 1983 claim, is GRANTED.

7      5.   <u>Fair Employment and Housing Act Claim (Eighth Cause of Action)</u>

8      Finally, all plaintiffs assert that the City is liable for failure to prevent discrimination

9 and harassment under California's FEHA. Generally, it is an unlawful employment practice

10 under FEHA for an employer to "fail to take all reasonable steps necessary to prevent

11 discrimination and harassment from occurring." <u>See Trujillo v. North Co. Transit Distr</u>., 63

12 Cal. App. 4th 280, 289 (1998).

13      California law under FEHA mirrors federal law under Title VII. Thus, and since

14 plaintiffs have not established discrimination or harassment in the first instance – for the

15 foregoing reasons – plaintiffs' claim for failure to prevent or investigate such discrimination,

16 fails at the outset. <u>See Trujillo</u>, 63 Cal. App. 4th at 289; <u>Tritchler v. County of Lake</u>, 358

17 F.3d 1150, 1155 (9th Cir. 2004); <u>Cook v. Lindsay Olive Growers</u>, 911 F.2d 233 (9th

18 Cir.1990) (<u>citing Mixon v. FEHC</u>, 192 Cal. App. 3d 1306 (1987) for the proposition that Title

19 VII law applies to FEHA claims).

20      The City's motion for summary judgment as to the FEHA claim is also accordingly

21 GRANTED.

22 C.    Motion for Sanctions

23      Plaintiffs also move for civil contempt and resulting sanctions, on grounds that

24 defendant failed to file a motion to seal certain exhibits designated "attorney's eyes only" or

25 "confidential," as required by the protective order in place in this action. In response,

26 defendant contends that its failure to do so was inadvertent, and that defendant sought to

27 correct its error as soon as practicable by notifying the ECF help desk of its error,

28

1  requesting a lock on the documents in question, and promptly filing a motion to seal.  The

2  City also withdrew several of its confidentiality designations.

3      As defendant conceded at the hearing, its initial failure to seek a sealing order in

4  connection with the exhibits in question technically violated the terms of the protective order

5  in place.  However, the court is persuaded that any error by defendant was inadvertent.

6  Thus, and for the reasons stated at the hearing, the court DENIES plaintiffs' motion for

7  sanctions.  See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th

8  Cir.1992)(district court retains discretion to establish appropriate sanctions).

9  D.     Conclusion

10      For the foregoing reasons, defendant's motion for summary judgment is hereby

11  GRANTED.  Plaintiffs' corresponding motion for civil contempt and for sanctions is also

12  DENIED.  The pretrial and trial dates are VACATED.[2]  The clerk shall close the file.

13  **IT IS SO ORDERED.**

14  Dated: April 13, 2012

15  _____
    PHYLLIS J. HAMILTON
16  United States District Judge

17

18

19

20

21

22

23

24

25

26  _____

27      [2]     In view of the court's ruling, the request to reschedule the parties' pretrial
    conference, as set forth in the April 13, 2012 letter submitted by defense counsel, see Docket
28  No. 235, is moot.

34